UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

TOKIO MARINE AND NICHIDO FIRE INSURANCE        Case Number: 07-Civ-5599 (PKL)
CO., LTD., as Subrogee, and NILT, INC., as Subrogor,

    *Plaintiffs*,

  -against-

MURRAY CANTER, CHERYL WICHINSKY-
CANTER, and ADAM J. CANTER

    *Defendants*.

-----------------------------------------------------------------x

# MEMORANUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP
Attorneys for Defendants
292 Madison Avenue
New York, New York 1007
212-661-7100

Defendants Murray Canter, Cheryl Wichinsky-Canter ("Cheryl W. Canter") and Adam J. Canter ("Adam Canter") submit this memorandum of law and the attached Declarations in support of their motion to dismiss Plaintiff Tokio Marine and Nichido Fire Insurance Co., Ltd. ("Tokio Marine" or "Subrogee"), and NILT, Inc.'s ("NILT" or "Subrogor") Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(5) & (6).

## PRELIMINARY STATEMENT

The Court must dismiss Plaintiffs' Complaint as their claims are barred by *res judicata*. NILT and Defendants Adam Canter and Cheryl W. Canter were all defendants in a prior personal injury action. The claims in the underlying personal injury action against Adam Canter and Cheryl W. Canter were based upon their allegedly negligent operation of a vehicle leased from NILT. The claims in the underlying personal injury action against NILT were based upon its ownership of the vehicle leased to Cheryl W. Canter and operated by Adam Canter. While the Canters and NILT each settled with the plaintiff in the underlying personal injury litigation, Plaintiffs now seek indemnification (subrogation) for the settlement of the claims brought against NILT.

Upon the settlement of all of the claims in the underlying action, all of the parties, including the plaintiff therein, Adam Canter, Cheryl W. Canter and NILT, entered into a Stipulation of Discontinuance, with Prejudice. This resulted in a termination of all of the claims that were or could have been asserted in the underlying litigation. Clearly, NILT could have asserted a cross-claim against the Canters in the then-pending underlying personal injury action, but it chose not to do so. Moreover, Plaintiffs could have "carved" its alleged indemnification (subrogation) claim out of the Stipulation of Discontinuance, with Prejudice – but neither did so,

nor even attempted to do so. Under well settled principles of *res judicata*, Plaintiffs' claims are now barred.

Moreover, Plaintiffs never properly served Adam Canter as he does not live at his parents' apartment where Plaintiffs attempted to serve him – but instead lives in Mexico. Further, Plaintiffs failed to properly serve each of the Defendants as they failed to file the Affidavits of Service with the Clerk in a timely manner. Accordingly, the Complaint must be dismissed as against each and every Defendant.

## STATEMENT OF FACTS

### *Background*

On or about September 20, 2002, Cheryl W. Canter and her husband, Murray Canter, entered into a written agreement with Ramsey Nissan for the lease of a 2002 Nissan Xterra XE (the "Lease") – bearing Serial No. 5N1ED28Y72C601791 (the "Nissan Truck"). (*See* Lease, attached to the Declaration of Cheryl W. Canter, as Exhibit A). While the Lease is strictly between Cheryl W. Canter, as lessee, her husband Murray Canter as co-lessee, and Ramsey Nissan, the Lease purports to give Ramsey Nissan the right to assign its rights under the Lease to Nissan-Infiniti LT ("NILT"), and to give NILT the right to assign its rights to Nissan Infiniti Services Co. ("NISC"). (Lease, Pars. 1 & 27). Plaintiffs allege at Par. 13 of their Complaint that Ramsey Nissan assigned its rights and obligations under the Lease to NILT. (A copy of the Complaint in this action is attached to the Declaration of Cheryl W. Canter as Exhibit B)

Paragraph 16 of the Lease, entitled "Insurance" requires the Canters to maintain insurance for bodily injury liability of at least $100,000 per person and $300,000 per occurrence, and to provide Ramsey Nissan with "primary coverage as an additional insured" for such liability.

Buried deep within Paragraph 19 of the Lease, under the heading "Vehicle Maintenance and Use," and sandwiched in between provisions relating to the installation of an airbag on/off switch, and keeping the vehicle free from liens and encumbrances, the Lease states:

> If an airbag on/off switch is installed, you release us from any claims, losses or damages resulting from such installation, improper installation or your use or improper use of the switch. You agree to indemnify us for any loss, liability or expense arising from the use or condition of this Vehicle. You agree to keep this Vehicle free from liens and encumbrances.

(Lease, Par. 19). Aside from the fact that the indemnification provision has nothing to do with the paragraph heading under which it appears, and that it is hidden within the text of the paragraph, the provision reads as a complete and utter *non-sequiter* against the preceding and subsequent language of Paragraph 19. Whether a sinister attempt to mislead the Canters, or simply poor draftsmanship, the indemnification provision grossly lacks the requisite notice to the Canters in order to be enforceable. Nevertheless, this provision is the basis for Plaintiffs' current meritless action.

### *The Underlying Prior Personal Injury Action*

According to the Complaint, "[o]n or about April 10, 2003, at approximately 5:40 p.m., Adam J. Canter was operating the NILT vehicle [the Nissan Truck] on State Highway 12B towards its intersection of State Highway 46, in Eaton, New York. (Compl. Par. 14). Plaintiffs further allege that "[t]he intersection of State Highway 12B and State Highway 46 is controlled by a stop sign on State Highway 12B only" and that the Nissan Truck "operated by Adam J. Canter, came into contact with the vehicle, operated by Walker [Rebecca J. Walker] and traveling on State Highway 46 at or near its intersection of State Highway 12B in Eaton, New York." (Compl. Pars. 15 and 16). According to Plaintiffs, "[t]he impact caused Walker to sustain serious personal injuries." (Compl. Par. 18). Plaintiffs allege that Adam Canter was

3

operating the Nissan Truck with the permission of his mother Cheryl W. Canter and his father Murray Canter. (Compl. Par. 20).

On or about February 18, 2005, Rebecca J. Walker commenced a personal injury action, in the Supreme Court State of New York, County of Madison, entitled *Rebecca J. Walker v. Adam J. Canter, Cheryl S. Wichinsky, Nissan North America, Inc., Nissan Motors Acceptance Corp., Nissan Infiniti Lease Trust and XYZ Corporation*, Index No. 05-1073 (the "Underlying Action" or the "Walker Action"). (Compl. Par. 21). (A copy of the Complaint in the Underlying Action is attached to the Cheryl W. Canter Declaration as Exhibit C). Plaintiffs' Complaint in this action essentially adopts "wholesale" Plaintiff Rebecca Walker's allegations in the Underlying Action. As the Underlying Action includes claims against Cheryl W. Canter, Nissan North America, Inc., Nissan Motors Acceptance Corp., and NILT – Plaintiff Rebecca Walker specifically alleges in the Underlying Action that each of these Defendants is vicariously liable for the negligence, carelessness and recklessness of Adam Canter. (Underlying Action Complaint, Par. 19).

*GEICO's Defense*

Murray Canter and Cheryl W. Canter maintained the type and level of insurance required under the Lease through GEICO Insurance Company. As such, upon notifying GEICO of the Underlying Action, by letter dated February 23, 2005 (a copy of which is annexed to the Declaration of Cheryl W. Canter, as Exhibit D), GEICO confirmed it would provide a defense on behalf of the Canters through the law firm of Melvin & Melvin, PLLC.

GEICO, by and through Melvin & Melvin, provided a defense not only on behalf of Adam Canter and Cheryl W. Canter, but also on behalf of the Nissan corporate Defendants. Indeed, by pleading dated March 9, 2005 (a copy of which is attached to the Declaration of

Cheryl Canter as Exhibit E), Melvin & Melvin, appeared and filed an Answer & Affirmative Defenses on behalf of Adam Canter, Cheryl W. Canter and all of the Nissan corporate Defendants – specifically including NILT.

*The Settlement*

As per the limits set forth in the Lease, Murray Canter and Cheryl W. Canter's GEICO insurance policy provided the Canters with $100,000.00 of bodily injury liability insurance per person, and $300,000.00 per occurrence. But, the plaintiff in the Underlying Action claimed damages in excess of $100,000.00. As set forth in the Complaint, GEICO agreed to pay the plaintiff in the Underlying Action $100,000.00 – in return for a release of plaintiff's claims against the Canters.

The plaintiff in the Underlying Action simultaneously proceeded to separately pursue her claims against the Nissan corporate Defendants – specifically including NILT. Although the Nissan corporate Defendants were, like the Canters, represented by Melvin & Melvin in the litigation of the Underlying Action, the law firm of London Fischer, LLP negotiated a settlement on behalf of the Nissan corporate Defendants in the amount of an additional $110,000.00. (Compl. Par. 23).[1] The Canters were never given prior notice of the Nissan corporate Defendants' decision to settle with the Plaintiff in the Underlying Action for $110,000.00.[2]

---

[1] London Fischer also purports to represent the Plaintiffs in this action. In the unlikely event that Plaintiffs Complaint is not dismissed upon the instant motion, one of the central issues in this case will be whether NILT had any liability in the Underlying Action, and further whether the terms of NILT and the other Nissan corporate Defendants' settlement with plaintiff Rebecca Walker was fair and reasonable – given the circumstances. Such a determination will necessarily require the testimony of the London Fischer attorneys who were involved in negotiating NILT and the other Nissan corporate Defendants' settlement with plaintiff Rebecca Walker. Of course, 22 NYCRR Section 1200.21 (DR 5-102) specifically prohibits a lawyer and his firm from representing parties like NILT and Tokio Marine where, as here, Defendants will certainly call one of London Fischer's attorneys as a witness on a significant issue, and the attorney's (Continued)

5

By Stipulation, dated November 29, 2006, all of the parties to the Underlying Action entered into a Stipulation of Discontinuance, with Prejudice by and against the Plaintiff and the Defendants, and by and amongst the Defendants. (A copy of the Stipulation of Discontinuance, with Prejudice is annexed to Cheryl W. Canter's Declaration as Exhibit F). Melvin & Melvin signed the Stipulation on behalf of Cheryl W. Canter, Adam Canter, Nissan North America, Inc., Nissan Motors Acceptance Corp., and Nissan Infiniti Lease Trust – NILT. Adam Canter, Cheryl W. Canter, and NILT further received a release from Plaintiff Rebecca Walker (a copy of which is attached to the Declaration of Cheryl W. Canter as Exhibit G), which at Par. 3 specifically states that the release shall be a "fully binding and complete settlement among the plaintiffs, the defendants and the insurers, and their heirs, assigns and successors."

At no time did NILT or any of the other Nissan corporate Defendants attempt to preserve any rights they might have had as against the Canters, and the Canters had no reason to believe that the Stipulation of Discontinuance did not fully and finally terminate all claims arising out of the events alleged in the Underlying Action. Indeed, by letters, dated December 20, 2006 (copies of which are attached to the Declaration of Cheryl Canter as Exhibit H), GEICO advised Ms. Canter and Adam Canter that: "We are pleased to inform you that we have successfully resolved this lawsuit resulting from the claim referenced above. Thank you for your cooperation in the defense of this action." Moreover, by notice, dated September 14, 2006, and issued upon

---

(Continued from prior page) testimony may be prejudicial to Tokio Marine and NILT. While Defendants do not, at this time, move to disqualify London Fischer, it is clear that London Fischer must withdraw from its representation of Plaintiffs. Defendants reserve the right to move to disqualify London Fischer, in the event that the Court does not dismiss the Complaint.

[2] During the pendency of the Underlying Action, and prior to the time that Plaintiffs NILT and Tokio Marine settled with plaintiff Rebecca Walker, the United States Congress passed 119 Stat. 1935 – which precludes a leasing company from incurring vicarious liability on the basis of its lessee being involved in an automobile accident. This law became effective with respect to any action commenced on or after August 10, 2005.

the Canters' return of the Nissan Truck at the expiration of the Lease (a copy of which is attached to the Declaration of Cheryl W. Canter as Exhibit I), Nissan specifically advised the Canters that they had no further obligations under the Lease.

*The Present Action*

On or about June 12, 2007, more than six (6) months after the dismissal of the Underlying Action, Plaintiffs commenced the instant action against Defendants. As set forth above, the allegations mirror those contained in the Underlying Action. Plaintiffs Tokio Marine and NILT assert claims against Murray Canter and Cheryl W. Canter for contractual indemnification. Plaintiffs further assert a claim against Adam Canter for common law indemnification. Plaintiffs argue that it was vicariously liable to plaintiff Rebecca Walker in the Underlying Action and therefore agreed to make a settlement payment to plaintiff Rebecca Walker. Plaintiffs now seek indemnification for their voluntary settlement payment to plaintiff Rebecca Walker in the Underlying Action.

According to the Affidavit of Service of the summons and complaint in this action, beginning July 20, 2007 and continuing through August 27, 2007, Chris Saffran made numerous unsuccessful attempts to serve Adam and his parents at his parents' apartment located in New York, New York. (A copy of the Affidavit of Service is attached to the Declaration of Adam Canter as Exhibit 1). Then, on August 28, 2007, Chris Saffran purports to have initiated "nail and mail" service upon Adam by attaching the summons and complaint in this action to his parents' apartment, located at 333 East 79th Street, Apartment No. 3N, New York, New York. (Declaration of Adam Canter, Par. 4). According to the Affidavit of Service, on the very same date, Chris then mailed a copy of the summons and complaint to Adam at his parents' New York, New York apartment. (Declaration of Adam Canter, Par. 4).

7

At the time that Chris Saffran allegedly served Adam Canter, Adam was living in Mexico. Since July 22, 2007, he has lived in Mexico – where he is attending medical school at Universidad Autonoma de Guadalajara. (Declaration of Adam Canter, Par. 2). He is domiciled, and resides at 1371 Callejon del Quijote, Apartment No. 6, Zapopan, Jalisco, Mexico 45110. (Declaration of Adam Canter, Par. 2). He is in his first year of medical school and plans to continuously reside and be domiciled in Mexico over the course of the next four years of school. (Declaration of Adam Canter, Par. 2).

Moreover, Plaintiffs did not file the Affidavit of Service with the Court within 20 days of August 28, 2007 and, therefore, Plaintiffs have not only failed to properly serve Adam Canter, but also have failed to properly serve his parents. (Declaration of Adam Canter, Par. 6).

## **LEGAL ARGUMENT**

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint must be accepted as true and all inferences must be drawn in the light most favorable to the plaintiff. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2nd Cir. 1999). While the pleading standard may be liberal, bald assertions and conclusions of law will not allow a pleading to survive a motion to dismiss. *Leeds v. Meltz*, 85 F.3d 51, 53 (2nd Cir. 1996). Thus, claims should be dismissed on the pleadings where, as here, the non-moving parties cannot obtain their requested relief – even if they prove the facts, as they allege them to be. *Parnes v. Mast Property Investors, Inc.*, 776 F.Supp. 792, 795 (S.D.N.Y. 1991).

In analyzing a motion to dismiss, the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. West*

*Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2nd Cir. 1991). In this regard, "the court may consider both those documents in the plaintiff's possession, as well as those documents of which plaintiff had knowledge or relied upon in bringing suit." *Lomaglio Assoc., Inc. v. LBK Marketing Corp.*, 892 F.Supp. 89, 92 (S.D.N.Y. 1995), *citing Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2nd Cir. 1993)). Clearly, this would include the Order, Lease, and documents from the Underlying Action – including but not limited to the Stipulation of Discontinuance, with Prejudice and Release.

## POINT I.

## PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*

The Courts have repeatedly held that an executed stipulation of discontinuance, with prejudice bars the parties to the stipulation and those in privity with such parties from relitigating not only claims that were part of the discontinued action, but also claims that could have been asserted in the discontinued action. *Fifty CPW Corp. v. Epstein*, 16 A.D.3d 292, 792 N.Y.S.2d 58 (App. Div. 2nd Dep't. 2005). Here, Plaintiffs (specifically including NILT) entered into a Stipulation of Discontinuance, with Prejudice of the Underlying Action. Therefore, Plaintiff NILT waived any claims that it asserted or could have asserted at that time, including claims for indemnification, as against Adam Canter, Cheryl W. Canter and Murray Canter – who is in privity with Adam Canter and Cheryl W. Canter.

Plaintiff's Tokio Marine's purported right to indemnification accrued upon its payment to and for its insured NILT's alleged loss, but is derivative of, and limited by NILT's rights. *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 626 N.Y.S.2d 994, 996 (1995). As the Court of Appeals stated:

9

> The rights of an insurer as equitable subrogee against a third party are derivative and limited to such rights as the insured would have had against such third party for its default or wrongdoing. Thus, the insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured.

*Federal Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 553 N.Y.S.2d 291, 293 (1990) (Internal citations omitted). Thus, the Stipulation of Discontinuance, with Prejudice terminated any all further claims arising out of the Underlying Action by not only NILT but also Tokio Marine.

In *Forte v. Kaneka America Corp.*, 110 A.D. 81, 493 N.Y.S.2d 180, 183 (App. Div. 2nd Dep't. 1985), the court held that plaintiffs' discontinuance, with prejudice of a pending action barred plaintiffs from continuing to pursue claims that they simultaneously maintained against the very same defendants in another action. As in this case, the stipulations in *Forte* were "unambiguous and spell out clearly that the parties intended to that plaintiffs who were parties thereto were to be precluded from seeking future recovery upon "any causes of action that could have been asserted arising out of the transactions set forth in the complaints in the discontinued actions." *Id*. Moreover, the court noted that every theory of liability asserted in the instant action either was already asserted in the earlier action, or could have been asserted. Thus, the court not only applied *res judicata* to the plaintiffs who were the same in both actions, but also to a wife of a plaintiff in the discontinued action – who was not a party to the discontinued action – but, whose claim derived from her husband's injury. *Id*. at 184.

In *Fifty CPW Tenants Corp.*, the court held that plaintiff's guaranty claims against defendants were barred on the basis of *res judicata*, as they arose out of the very same set of facts as plaintiff's third-party indemnification claim that was discontinued, with prejudice. The Appellate Division, First Department held that:

> Under New York's transactional approach to *res judicata* issues, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. Further, a claim will be barred by the prior adjudication of a different claim arising out of the same "factual grouping" even if the claims "involve materially different elements of proof" and even if the claims would call for different measures of liability or different kinds of relief. Stated otherwise, *res judicata* bars not only claims that were actually litigated to conclusion on the merits but also claims that could have been litigated in the prior action of the they arose from the same transactions.

*Fifty CPW Tenants Corp.*, 792 N.Y.S.2d at 59-60. The court's position was supported by the fact that plaintiff could have asserted its guaranty claims in its third-party action – but, it chose not to do so. Further, the stipulation, itself, failed to contain any reservation of plaintiff's right to pursue related claims, or that the stipulation only related to those claims actually asserted in the third-party action.

The federal courts apply the very same rule as that applied in the First and Second Departments. For example, in *Storey v. Cello Holdings*, LLC, 182 F.Supp.2d 355 (S.D.N.Y. 2002), the court held that an order of discontinuance with prejudice of a prior action, forever barred defendant from not only litigating the very same claims against plaintiffs as those which it had already asserted, but also from pursuing arbitration against plaintiff or asserting any claims that could have been asserted in the prior action. The *Storey* court specifically held that: "A dismissal with prejudice has the effect of a final adjudication . . . . [and] constitutes a final judgment with preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." *Id.* at 361. The *Storey* court further noted that *res judicata* applies to a dismissal, with prejudice even where, as here, the parties have not actually litigated the claims to resolution. *Id.*, citing *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834 (2d Cir. 1991).

Significantly, the *Storey* court found that defendants and their attorney's actions were so grossly incompetent – as defendants claims were clearly barred by *res judicata*, that the court imposed Rule 11 sanctions against defendants, and their attorney, and awarded plaintiff attorney's fees. *Id.* at 369.

Here, Plaintiff NILT was a party to the Underlying Action, and was represented by counsel. NILT negotiated a settlement with the Plaintiff Rebecca Walker in the Underlying Action. As part of that settlement, NILT entered into a Stipulation of Discontinuance, With Prejudice with not only Plaintiff Rebecca Walker, but also the Canters. Adam Canter, Cheryl W. Canter, and NILT further received a release from Plaintiff Rebecca Walker, which specifically states that the release shall be a "fully binding and complete settlement among the plaintiffs, the defendants and the insurers, and their heirs, assigns and successors."

Despite the fact that Tokio Marine was allegedly paying for NILT's settlement with Plaintiff, and further NILT knew or should have known about its and its insurer's purported right to indemnification, NILT failed to take any action to protect it or Tokio Marine's right to seek such relief. NILT could have asserted a cross-claim against Adam Canter and Cheryl W. Canter in the Underlying Action, but failed to do so. NILT further could have "carved" out of the Stipulation of Discontinuance its and, therefore, Tokio Marine's right to seek indemnification from Adam Canter, Cheryl W. Canter and Murray Canter – but it knowingly and intentionally failed to do so. Finally, by notice from Nissan Motor Acceptance Corporation, dated September 14, 2006, and issued upon the Canters' return of the Nissan Truck at the expiration of the Lease, Nissan specifically advised the Canters that they had no further obligations under the Lease.

Accordingly, as (a) NILT could have asserted an indemnification claim against the Canters in the Underlying Action, but failed to do so, and (b) both NILT and Tokio Marine could have taken action to preserve their right to pursue an indemnification claim, but failed to do so and instead NILT entered into a Stipulation of Discontinuance, with Prejudice – NILT and Tokio Marine are permanently barred from pursuing a claim of indemnification against any of the Canters.

### POINT II.

### DEFENDANT ADAM CANTER WAS NEVER PROPERLY SERVED

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, Plaintiffs purport to have served Defendants by "nail and mail" service – as prescribed in Section 308(4) of the CPLR. As set forth above, and in the Declaration of Adam Canter, at the time that Plaintiffs attempted to serve him at his parents' New York, New York apartment on August 28, 2007 he was living in Mexico. Indeed, he has been living there since July 22, 2007. He has made his address in Mexico his residence and domicile and was not using his parents' New York, New York apartment as his "dwelling place or usual place of abode" at the time that Plaintiffs attempted to serve him there. Accordingly, Plaintiffs have failed to properly serve Adam Canter, and this action should be dismissed as against him.

Moreover, this court has specifically held that where, as there, there is a requirement that plaintiffs file an affidavit of service of a summons and complaint as part of the process of completing service, their failure to do so results in their attempted service being ineffective. In *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654 (S.D.N.Y. 1997), *affirmed* 173 F.3d 844 (2nd Cir. 1999), the court held that "leave and mail" service under Section 308(2) is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of

13

the date on which the process server mailed the summons and complaint." Service under Section 308(4) contains the very same filing requirement as service under Section 308(2) of the CPLR. Thus, Plaintiffs' failure in this action to file their proofs of service means that none of the Defendants were properly served with process, and the Complaint should be dismissed as against each of them.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      October 19, 2007

                      SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP

By: _____
     Daniel I. Goldberg (DG 5745)
     Attorneys for Defendants
     292 Madison Avenue
     New York, New York 10017
     (212) 661-7100