UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

TOKIO MARINE AND NICHIDO FIRE INSURANCE    Case Number: 07-Civ-5599 (PKL)
CO., LTD., as Subrogee, and NILT, INC., as Subrogor,

                          *Plaintiffs*,

      -against-

MURRAY CANTER, CHERYL WICHINSKY-
CANTER, and ADAM J. CANTER

                          *Defendants*.

------------------------------------------------------------x


# DEFENDANTS' REPLY MEMORANUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP
Attorneys for Defendants
292 Madison Avenue
New York, New York 1007
212-661-7100

Defendants Murray Canter, Cheryl Wichinsky-Canter ("Cheryl W. Canter") and Adam J. Canter ("Adam Canter") submit this memorandum of law in further support of their motion to dismiss Plaintiff Tokio Marine and Nichido Fire Insurance Co., Ltd. ("Tokio Marine" or "Subrogee"), and NILT, Inc.'s ("NILT" or "Subrogor") Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(5) & (6), and in reply to Plaintiffs' opposition.

## PRELIMINARY STATEMENT

The Court must dismiss Plaintiffs' Complaint as their claims are barred by *res judicata*. All of the parties, including the plaintiff in the Underlying Action, Adam Canter, Cheryl W. Canter and NILT, entered into a Stipulation of Discontinuance, with prejudice. This resulted in a termination of all of NILT's claims that were or could have been asserted in the Underlying Action. As set forth at Section 3019(b) of the CPLR, and contrary to Plaintiffs' argument, NILT could have asserted a cross-claim against the Canters in the then-pending Underlying Action – regardless of whether or not its claim had "accrued." Indeed, the very case law upon which Plaintiffs rely in opposing this motion demonstrates that NILT could have asserted claims against Defendants in the Underlying Action, but it chose not to do so. Moreover, Plaintiffs never properly served Adam Canter as the unrebutted fact is that he does not live at his parents' apartment where Plaintiffs attempted to serve him – but instead resides and is domiciled in Mexico.

## POINT I.

### NILT AND TOKIO MARINE WAIVED THEIR ALLEGED RIGHT TO INDEMNIFICATION

In an attempt to nullify NILT's discontinuance of claims against Defendants in this action, Plaintiffs have asserted that NILT and Tokio Marine's right to assert a claim against the Defendants in this action did not accrue until they paid the plaintiff in the Underlying Action the

agreed upon settlement amount. This is a red-herring. Not only is this incorrect, but one of the principal cases Plaintiffs rely upon contradicts this very argument.

It is beyond absurd for Plaintiffs to now argue that NILT could not have: (a) asserted its right to indemnification through a cross-claim against Defendants, or (b) given up its right to indemnification prior to NILT's payment of the settlement amount.

Section 3019(b) of the CPLR specifically states:

> Subject of cross-claims. A cross-claim may be any cause of action in favor of one or more defendants or a person whom a defendant represents against one or more defendants, a person whom a defendant represents or a defendant and other persons alleged to be liable. A cross-claim may include a claim that the party against whom it is asserted is or may be liable to the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Thus, the plain language of Section 3019 of the CPLR authorized NILT to assert a cross-claim for indemnification – even before it made a settlement payment to the plaintiff in the Underlying Action, and its claim allegedly "accrued."

Professor David D. Siegel's Practice Commentaries to Section 3019(b) make it clear that, even if a party's rights to indemnification have not "accrued" into a claim, that party may nevertheless assert a claim for indemnification:

> C3019:14. Cross Claim for Indemnification.
>
> One of the uses of a cross-claim is to interpose an indemnification cause of action by defendant A against co-defendant B to require B to make good to A all or part of that which the plaintiff may recover of A. If B were not already made a co-defendant, A could implead B for this indemnification purpose under the third-party practice provisions of CPLR 1007. The presence of B in the case as a co-defendant, however, makes separate impleader (which requires formal service of the summons and third-party complaint) unnecessary and enables the cross-claim, which is usually servable by mere mail under CPLR 2103(b)(2), to plead the indemnification cause.
>
> The point is that an indemnification claim is only one of the may uses of a cross-claim, which under CPLR 3019(b) can be for any cause of action one defendant has against another, while a third-party claim is ordinarily restricted to an indemnification-type claim.

2

> The authorization to use a cross-claim for indemnification causes of action is specific in CPLR 3019. <u>The reason for an express statement such as subdivision (b)'s last sentence is to assure the availability of an indemnity cross-claim as against a contention that the claim is premature. Such contention would be that, as an indemnity cause of action, it does not accrue until the person to be indemnified has actually lost something (i.e., paid out something) for which indemnity is required. Subdivision (b)'s last sentence immunizes an indemnity cross-claim from such an argument.</u> (Emphasis added).

Section 3019(b) of the CPLR specifically authorizes the very claim that Plaintiffs argues had not yet "accrued" and, therefore, the Stipulation of Discontinuance results in dismissal and waiver of its and Tokio Marine's claims against Defendants.

The courts have consistently held that a defendant may assert a cross-claim for indemnification, prior to a court's determination of its liability or its settlement payment in respect of its alleged liability. *See eg. La Vack v. National Shores, Inc.*, 124 A.D.2d 352, 507 N.Y.S.2d 293 (App. Div. 3rd Dep't. 1986) (holding defendant did not have to wait until injured party proved her case to assert a cross-claim for indemnity); *Searles v. Dardani*, 75 Misc.2d 279, 347 N.Y.S.2d 662 (Albany Co. Sup. Ct. 1973) (holding that a party named in a negligence action may, by impleader or counterclaim, join any other person he claims caused or contributed to the plaintiff's injury to obtain indemnification or contribution based on their respective degrees of fault); *Zogby v. Mid-State Builder, Inc.*, 22 Misc.2d 667, 199 N.Y.S.2d 333 (Oneida Co. Ct. 1960) (holding cross-claim is sufficient on its face if factual situation alleged is such that answering defendant may be held liable to plaintiff on a ground or theory which would entitle defendant to be indemnified by co-defendant).

NILT could have asserted a cross-claim for indemnification against Defendants, but knowingly and intentionally failed to do so. It cannot now be heard to argue that it did not mean to waive its claim. NILT and Tokio Marine knew of its alleged right to indemnification, but failed to make any effort to obtain an agreement from Defendants to "carve out" from the Stipulation of Discontinuance their right to assert claims against Defendants. Setting aside the

3

fact that Section 3019 of the CPLR gave NILT the right to assert a claim against Defendants prior to making its settlement payment in the Underlying Action, as the settlement payment was logically a condition of the Stipulation of Discontinuance, NILT certainly could have refused to enter into the Stipulation of Discontinuance, or could have insisted upon a "carve out" from the Stipulation before authorizing the release of its settlement payment from escrow.

Despite NILT and Tokio Marine's attempts, this case is not analogous to *Allianz Insurance Company v. Lerner*, 296 F.Supp.2d 417 (E.D.N.Y. 2003). There, the plaintiff in the underlying action was involved in an automobile accident. The plaintiff in the underlying automobile accident litigation asserted claims against two separate drivers and the leasing company of one of the cars driven by one of the defendant/lessor drivers. Unlike in this case, and indeed contrary to NILT's and Tokio Marine's argument that it could not have dismissed its claims against Defendants, because they had not yet "accrued," the defendant leasing company in the underlying *Allianz* litigation asserted a cross-claim for contractual indemnification against the defendant driver/lessor of its vehicle.

Each of the three defendants in the underlying *Allianz* litigation settled with the plaintiff. In order to effectuate this, each defendant entered into a separate and distinct stipulation of discontinuance that was only signed by that particular defendant and the plaintiff. Each stipulation only dismissed plaintiff's specific claim against the defendant party to the stipulation. In considering the effect of the stipulations, the court wrote that: "Like a final judgment on the merits . . . the *res judicata* effect of a stipulation of discontinuance can effect only claims, raised and potential, between the parties signing the stipulation." *Id.* at 422.

4

On this point, the court *Allianz* noted that, unlike the case at hand,

> Notably, no single stipulation bears the signature of both counsel for MBCC (the predecessor of Allianz) [and, the cross-claimant], and that of MBCC's co-defendant in the State Court Litigation (and defendant here), Regina Lerner. Instead, each stipulation was executed only by plaintiff's counsel and each of the three defense counsel. The stipulations intended only to dismiss the state court plaintiff's personal injury claims against each of the defendants so as to conclude that part of the litigation. The contractual cross-claim raised by MBCC against Regina Lerner was neither expressly nor impliedly disposed of by the stipulations settling plaintiff's personal injury claims against the defendants.

*Id.* at 422. Thus, the court's refusal to give *res judicata* effect to plaintiff's previously asserted claims for indemnification was based upon the fact that: (a) unlike in this case, the plaintiff had asserted its cross-claims for indemnification in the underlying action, and (b) unlike in this case, the parties had entered into separate and distinct stipulations of discontinuance in the underlying action – which reflected their collective intention to preserve for a later date the plaintiff's cross-claims.

Unlike this case, the plaintiff and defendant indemnitor in the *Allianz* litigation were never parties to a single stipulation of discontinuance or comprehensive general release of claims. Here, the Stipulation of Discontinuance specifically states, "IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the attorneys of record for the parties appearing in the above entitled action, that whereas no party hereto is an infant incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action, the above-entitled action is hereby discontinued with prejudice, without costs to any of the undersigned party as against the other." Clearly, both NILT and Defendants were parties to one agreement – whereby NILT gave up and failed to preserve its alleged right to seek or assert a claim for indemnification. There can be no

5

doubt that the parties never took any action to preserve NILT's rights and claims and, therefore, they were waived and dismissed, with prejudice.[1]

There is simply no legal justification for not following the long-established rule that an executed stipulation of discontinuance, with prejudice, bars the parties to the stipulation and those in privity with such parties from relitigating not only claims that were part of the discontinued action, but also claims that could have been asserted in the discontinued action. *Fifty CPW Corp. v. Epstein*, 16 A.D.3d 292, 792 N.Y.S.2d 58 (App. Div. 2nd Dep't. 2005).

In a further desperate attempt to invalidate NILT's dismissal of claims against Defendants, Plaintiffs make the ludicrous argument that NILT did not knowingly and intentionally enter into the Stipulation of Discontinuance. Plaintiffs' reliance upon *Pfeiffer v. United States of America*, 200 U.S. App. LEXIS 27851 (2nd Cir. 2000) is unexplained. In *Pfeiffer*, the court considered and rejected a criminal defendant's arguments that his entry into a stipulation should be voided, because he was coerced into the stipulation and received ineffective counsel. Similarly, Plaintiffs' reliance upon *Godinez v. Moran*, 509 U.S. 389, 125 L.Ed.2d 321, 113 S.Ct. 2680 (1993) which considered and rejected a criminal defendant's attempt to attack his prior plea agreement on the basis of (in)competency is misplaced.

Let us remember that NILT and Tokio Marine are sophisticated businesses. NILT and Tokio Marine have platoons of lawyers that represent their interests. It is simply unbelievable for Plaintiffs to now argue that NILT did not know what it was doing or the effect of its actions

---

[1] In reaching its decision, the *Allianz* court relied upon the decision in *Prada v. City of New York*, 283 A.D.2d 314, 316, 725 N.Y.S.2d 32, 34-35 (App. Div. 1st Dep't. 2001), which held that a court's dismissal of a plaintiff's claims against certain defendants, does not necessarily preclude third-party claims by another defendant against the already dismissed defendants. The court reasoned that, while the dismissed defendants may not have owed a duty to the plaintiff, they may have owed a duty to the defendant/third-party plaintiff. This logic and reasoning have no place here where, unlike in *Prada*, NILT never asserted any claims against Defendants, or took any action to protect its alleged indemnification rights as against the Defendants, and the Court did not rule upon only some of the existing claims. Instead, the parties knowingly and intentionally entered into a stipulation of discontinuance dismissing any and all claims by and amongst the plaintiff in the Underling Action and the co-defendants – appearing in this action as the Plaintiffs and Defendants.

when it entered into the Stipulation of Discontinuance. As Plaintiffs assert, a review of the Federal Docket reveals that NILT and Tokio Marine have commenced literally scores of indemnification/subrogation actions against lessees. However, Plaintiffs' lengthy discussion of the indemnification/subrogation cases in which it has prevailed does little to advance its argument, because none of those cases answers the question of whether Plaintiffs waived their rights against Defendants by NILT's entry into the Stipulation of Discontinuance in the Underlying Action.

Given the number of cases in which Plaintiffs have attempted to pursue their indemnification/subrogation claims after the conclusion of an underlying action, they must be well informed as to the danger of entering into a stipulation of discontinuance in the underlying action, if they later intend to pursue their rights and claims. It is apparent that in an effort to protect its settlement with Plaintiff, NILT took a calculated risk by failing to raise its cross-claims and entering into the Stipulation of Discontinuance. Plaintiffs knew all along what they were doing, and cannot now argue that they did not know that NILT was securing the Stipulation of Discontinuance (as drafted and without a "carve-out") at the peril of being precluded in the future from maintaining their claims against Defendants.

## POINT II.

## PLAINTIFFS FAILED TO PROPERLY SERVE ADAM J. CANTER

Plaintiffs purport to have served Adam Canter, pursuant to the "nail and mail" provisions of Section 308(4) of the CPLR -- which state, in pertinent part that: "where service under paragraphs one and two [of Section 308] cannot be made with due diligence, [service may be made] by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served . . . ." Here, Plaintiffs claim that they served him at his parents' New York apartment on August 28, 2007. However, the

7

unrebutted fact is that Adam Canter did not reside at his parents' New York apartment at the time that he was allegedly served there, and further did not maintain his parents' apartment as his domicile at the time that he was allegedly served there.

The law is clear that if Adam Canter was not living at his parents' apartment at the time of Plaintiffs' alleged service, he cannot be deemed to have been properly served. In *Feinstein v. Bergner*, 48 N.Y.2d 397, 422 N.Y.S.2d 356, 359-60 (1979), the Court of Appeals considered and rejected plaintiff's "nailing" of the summons and complaint to the door of defendant's parents' home as improper service – as defendant had not lived there for approximately 18 months. *See also, Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385-86 (S.D.N.Y. 1986) (rejecting plaintiff's "nailing" of the summons and complaint to the door of defendants' aunt's home on the basis that it was improper service, given that defendants had presented affidavits that they did not reside with their aunt at the time that they were allegedly served there); *N.Y. St. Higher Ed. Servcs. Corp. v. Perchik*, 207 A.D.2nd 1040, 617 N.Y.S.2d 610 (App. Div. 4th Dep't. 1994) (holding plaintiff failed to comply with Section 308(2) of the CPLR, as defendant submitted an unrefuted affidavit that plaintiff attempted to serve him at his father's address – a location at which he does not reside); *Freedman v. Wyatt*, 88 A.D.2d 610, 450 N.Y.S.2d 48 (App. Div. 2nd Dep't. 1982) (ordering a hearing on whether defendant was properly served, as it was unclear whether at the time that the summons and complaint were affixed to defendant's parents' residence, she was actually a resident there); *DeCapua v. Morrissey*, 67 A.D.2d 832, 413 N.Y.S.2d 69 (Appellate Term, 4th Dep't. 1979) (rejecting plaintiff's attempted service, on the basis that the dwelling house to which the process server had affixed a copy of the summons and complaint was not defendant's residence at the time).

With respect to Plaintiffs' arguments that Adam Canter was properly served, their authority so misplaced it is as if they did not read the cases. It is troubling that they consistently quote decisions, and rely upon holdings out of the context in which they are presented.

For example, Plaintiffs rely upon *Alvord & Alvord v. Raymond*, 196 Misc. 524, 92 N.Y.S.2d 514 (N.Y. Co. Sup. Ct. 1949) for the misguided argument that Adam Canter was properly served while he was in Mexico establishing his new apartment as his domicile, but forget to mention the fact that the defendant in *Alvord* was deemed to have been properly served in New York because at the time he was served he had not yet reached the destination of his new residence and had not yet made his new residence his domicile and, therefore, his old domicile remained in effect. Clearly, Plaintiffs cannot be arguing that, even though Adam Canter had taken up his new residence on July 22, 2007, with the intention of living there for the foreseeable future, that he had not established his new residence and domicile when Plaintiffs attempted to serve him almost a month later on August 28, 2007 at his parents' apartment.

Plaintiffs' reliance upon *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 484 N.Y.S.2d 514 (1984) for the suggestion that a person can be a "resident" of New York if he or she lived there for some time during the year in question is inapplicable. The court's interpretation of the term "resident" was made in the context of Section 202 of the CPLR – which prescribes whether a claim arising outside the State is subject to the statute of limitations of the State of New York or another jurisdiction. Certainly, if a plaintiff has spent a significant period of time in the State, it will bear upon the court's determination of whether the plaintiff may take advantage of New York's statute of limitations. Ultimately, however, in *Antone* the court found that although plaintiff resided in the State for the first five months of the year in which he was injured, he lived out of the State for the four months prior to and at the time of he was injured and, therefore, plaintiff was not a resident in the State for purpose of CPLR 202.

9

Further, *Porcello v. Bracket*, 85 A.D.2d 917, 446 N.Y.S.2d 780 (App. Div. 4th Dep't. 1981) does not stand for the proposition that college students cannot establish a new residence or domicile while attending school, but instead that in *Porcello* the defendant's registration to vote in Massachusetts, and his frequent trips home to his parents between semesters and over the summer all compelled a finding that defendant continued to reside with his parents in Massachusetts, and that he did not establish a permanent residence in New York – where he was going to school.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 7, 2007

SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP

By: _____
    Daniel I. Goldberg (DG 5745)
    Attorneys for Defendants
    292 Madison Avenue
    New York, New York 10017
    (212) 661-7100