UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOKIO MARINE AND NICHIDO FIRE
INSURANCE CO., LTD., as Subrogee, and
NILT, INC., as Subrogor,

        Plaintiffs,

        - against -

MURRAY CANTER, CHERYL
WICHINSKY-CANTER, and ADAM J.
CANTER,

        Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/11/09

**OPINION AND ORDER**

07 Civ. 5599 (PKL)

---

**APPEARANCES**

LONDON FISCHER LLP
59 Maiden Lane
New York, New York 10038
Hae Jin Shim, Esq.

Attorneys for Plaintiffs

SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP
292 Madison Avenue
New York, New York 10017
Daniel I. Goldberg, Esq.

Attorneys for Defendants

**LEISURE, District Judge:**

Plaintiffs Tokio Marine and Nichido Fire Insurance Co., Ltd. ("Tokio Marine"), as Subrogee,[1] and NILT, Inc. ("NILT," and together with Tokio Marine, "plaintiffs"), as Subrogor, bring this diversity action against Murray Canter, Cheryl Canter (together, "the Canters"), and Adam Canter (together with the Canters, "defendants") seeking indemnification for a sum paid in settlement of a personal injury action brought in Supreme Court of the State of New York, Madison County (the "state court"). Plaintiffs and defendants in this action were co-defendants in the prior personal injury action. Defendants now move to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Defendants contend that the Stipulation of Discontinuance, with prejudice (the "Stipulation"), entered in the state court action, bars any future claims that plaintiffs could have asserted in the prior action based on principles of res judicata and thus, plaintiffs' complaint fails to state a claim upon which relief can be granted. In the alternative, defendants contend plaintiffs' service of process was insufficient because plaintiffs failed to (i) properly serve Adam Canter at his dwelling place or usual place of abode, and (ii) file Affidavits of Service with the Clerk of the Court in a timely manner. For the reasons stated below, defendants' motion to dismiss on the grounds of res judicata is DENIED. Further, defendants' motion to dismiss for insufficient service of process is DENIED with respect to the Canters; however, with respect to Adam Canter, the motion is GRANTED, but stayed for thirty days to provide plaintiffs with the opportunity to properly effect service.

---

[1] As NILT Inc.'s subrogee, Tokio Marine's right to pursue an indemnification claim is dependent on whether NILT is precluded from pursuing its indemnification claim. See Winkelmann v. Excelsior Ins. Co., 85 N.Y.2d 577, 582, 650 N.E.2d 841, 844 (N.Y. 1995) ("[A]n insurer who has paid the policy limits possesses the derivative and limited rights of the insured and may proceed directly against the negligent third party to recoup the amount paid.").

## BACKGROUND

For purposes of this motion to dismiss, well-pleaded facts in the complaint are assumed to be true and are construed in the light most favorable to plaintiffs. Certain additional facts are drawn from documents appended to the complaint as an exhibit or incorporated therein by reference, see Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."); Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing their suit." (internal citations omitted)); Berman v. Sugo LLC, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008) (explaining that in determining the adequacy of a claim under Rule 12(b)(6), a district court can consider documents appended to the complaint or incorporated by reference, and documents that plaintiff possessed or knew about and are integral to the complaint), or, as explained below, filed in the state court and subject to judicial notice, see Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).[2]

I.  FACTS

The Canters entered into a written agreement with Ramsey Nissan for the lease of a 2002 Nissan Xterra XE (the "vehicle") on September 20, 2002 (the "Lease"). (See Compl. ¶ 10.) The Lease names Cheryl Canter as lessee, Murray Canter as co-lessee, and Ramsey Nissan as lessor, but assigns and transfers Ramsey Nissan's rights to Nissan-Infiniti Lease Trust (the "Trust") (see

---

[2] The following documents have been excluded from the Court's consideration of this motion: Exhibits D, H, and I appended to the Declaration of Cheryl Canter, sworn to on October 17, 2007. These exhibits are not incorporated in the complaint by reference, nor are they matters of which judicial notice may be taken. Cf. Fed. R. Civ. P. 12(d) (stating where matters outside the pleadings are presented to and not excluded by the Court on a motion to dismiss, the motion is converted to one for summary judgment).

id. ¶ 13 and Ex. A.), of which NILT acts as trustee (id. ¶ 3). The Lease requires that (i) the

Canters maintain insurance for bodily injury liability of at least $100,000 per person and

$300,000 per occurrence, and (ii) provide Ramsey Nissan with "primary coverage as an

additional insured" for such liability. (See id. Ex. A.) In addition, under the heading "Vehicle

Maintenance and Use," the Lease states that the Canters "agree to indemnify Ramsey Nissan for

any loss, liability or expense arising from the use or condition of th[e] Vehicle." (Id.)

## II. PROCEDURAL HISTORY

On or about April 10, 2003, Adam Canter was driving the vehicle and became involved

in an accident with another vehicle operated by Rebecca J. Walker ("Walker"), causing Walker

to sustain serious injuries. (See id. ¶¶ 14, 17-18.) On February 18, 2005, Walker commenced a

personal injury action against Adam Canter, Cheryl Canter, Nissan North America, Inc., Nissan

Motors Acceptance Corp., the Trust, and XYZ Corporation in state court, see Index No. 05-1073,

(the "*Walker* action"). (See id. ¶ 21.)

On November 29, 2006, defendants, the Trust, and Walker entered into the Stipulation.

(See Decl. of Cheryl Canter, sworn to on Oct. 17, 2007 ("C. Canter Decl.") Ex. F.)

Subsequently, on or about December 4, 2006, the *Walker* action settled for a total of $210,000,

of which the Trust's insurer, Tokio Marine, paid $110,000. (See Compl. ¶ 23.) To effectuate the

settlement, Walker executed a General Release in favor of the co-defendants in the *Walker* action

and their insurers, including Tokio Marine, in consideration of the amounts paid as settlement.

(See C. Canter Decl. Ex. G ¶ 3.)[3] The General Release states: "[t]his release, on the part of the

plaintiff, shall be fully binding and complete settlement among the plaintiff[], the defendants and

---

[3] It does not appear that the terms of the settlement were made part of the record in the *Walker* action. However, plaintiffs rely on the settlement terms found in the General Release in their complaint. (See Compl. ¶¶ 23-25.) Therefore, the General Release was integral to the complaint and within plaintiffs' possession when the complaint was filed. The Court may properly consider it on a motion to dismiss.

3

the insurers, and their heirs, assigns and successors." (Id.) In addition to the $110,000 paid in the settlement, Tokio Marine also incurred $12,480.00 in attorneys' fees, $160.50 in disbursements, and $1,623.77 in advances in connection with the defense of the *Walker* action. (See Compl. ¶ 24.)

In this action, plaintiffs seek indemnification in the amount of $124,264.27 from the Canters, based on a theory of contractual indemnification (see id. ¶¶ 27, 29), and from Adam Canter, based on a theory of common-law indemnification (see id. ¶ 31). Defendants now move to dismiss the instant claims against them.

## DISCUSSION

Defendants move to dismiss this action on two grounds. First, defendants assert that plaintiffs are precluded from litigating claims that could have been – but were not – asserted as cross-claims in the prior personal injury action, and which the Trust failed to "carve" out of the Stipulation. (See Defs.' Mem. Law Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") 1-2.) In the alternative, defendants assert plaintiffs failed to (i) properly serve Adam Canter, and (ii) timely file Affidavits of Service with the Clerk of the Court, and thus the Court may not exercise jurisdiction over defendants. (See id. at 2.) In response, plaintiffs contend that principles of res judicata do not preclude their claims in this action because (i) their cause of action did not accrue until after the *Walker* action settled, and (ii) the Stipulation did not explicitly bar claims that could have been asserted in the discontinued action. (See Pls.' Mem. Law Opp'n Defs.' Mot. Dismiss ("Pls.' Mem.") 5, 7.) Plaintiffs also argue that all defendants were properly served pursuant to Federal Rule of Civil Procedure 4 and N.Y. C.P.L.R. § 308(4) (see id. at 16), and therefore, the Court may exercise personal jurisdiction over defendants.

4

I.    PRECLUSION

   A. Applicable Law

   The parties do not dispute that the Lease contains an indemnity provision that gives rise

to plaintiffs' claims for indemnification in this action.  Accordingly, the issue before this Court is

whether the parties' settlement and discontinuance of the *Walker* action precludes the present

action for contractual and common law indemnification.  Defendants raise the affirmative

defenses of res judicata in their motion to dismiss under Rule 12(b)(6).  "[I]t is well settled that a

court may dismiss a claim on *res judicata* . . . grounds on a Rule 12(b)(6) motion."  Sassower v.

Abrahams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) (Leisure, J.) (citations omitted); see

Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("*Res judicata* challenges may

properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."

(citations omitted)); Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (finding res judicata

challenge properly raised on a 12(b)(6) motion if it is clear from the face of the complaint that

plaintiff's claims are barred).

   1.  Rule 12(b)(6) Standard of Review

   "On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to

support the claims.'"  Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam) (quoted

reference omitted).  In assessing the sufficiency of plaintiffs' complaint, the Court is guided by

the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947 (2009).  In Bell Atlantic, the Supreme Court disavowed

the familiar statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that "a complaint should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  See Bell Atl., 550

U.S. at 561-63 (announcing that Conley's "no set of facts" language had "earned its retirement").

Instead, the Bell Atlantic Court explained that, in order to withstand a motion to dismiss, a

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at

570; see also Benzman v. Whitman, 523 F.3d 119, 129 (2d Cir. 2008) (stating that a claim not

plausible on its face must be "supported by an allegation of some subsidiary facts to survive a

motion to dismiss.").

In Iqbal, the Supreme Court explained that "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." 129 S. Ct. at 1949.  Determining the facial

plausibility of a complaint is a "context-specific task" that requires this Court to "draw on its

judicial experience and common sense." Id. at 1950. "'[N]aked assertion[s]' devoid of further

factual enhancement" will not suffice; the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully." Id. at 1949.

Well-pleaded factual allegations are accepted as true for purposes of determining whether

a complaint states a plausible claim for relief. Id. at 1949-50; see Ruotolo v. City of New York,

514 F.3d 184, 188 (2d Cir. 2008); ATSI Commcn's, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98

(2d Cir. 2007); see Patane, 508 F.3d at 111.  In adjudicating defendants' Rule 12(b)(6) motion,

the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents

appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir.

1999) (internal quotation marks and citation omitted); accord Chambers v. Time Warner, Inc.,

282 F.3d 147, 152-53 (2d Cir. 2002).  The Court may properly "rely on matters of public record

in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial

decisions." <u>Jordan v. Verizon Corp.</u>, No. 08 Civ. 6414, 2008 U.S. Dist. LEXIS 100449, at *18-19 (S.D.N.Y. Dec. 10, 2008) (citing <u>Cameron v. Church</u>, 253 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2003)); <u>see also</u> <u>Blue Tree</u>, 369 F.3d at 217 (stating that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss"); <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) . . . .").

Here, the factual allegations in defendants' motion are predicated on proceedings in a New York state court.  Accordingly, in considering defendants' motion, the Court takes judicial notice of public documents filed in connection with the state court proceedings, "not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings." <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991).  Because the Stipulation was filed with the Madison County Clerk of Court in connection with the *Walker* action on January 9, 2007, the document is subject to judicial notice.  Dismissal based on res judicata is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiffs' claims are barred. <u>Houbigant, Inc. v. Dev. Specialists, Inc.</u>, 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002).

### 2.  Res Judicata

Res judicata bars a subsequent lawsuit where a defendant can show (1) an adjudication on the merits in the previous action, (2) that the prior action involved the same parties or their privies, and (3) that the claims asserted in the subsequent suit were raised, or might have been raised, in the prior proceeding. <u>See</u> <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>City of New York v. Welsbach Elec. Corp.</u>, 9 N.Y.3d 124, 127, 878 N.E.2d 966, 968 (N.Y. 2007) ("One linchpin of res judicata is an identity of parties actually litigating successive actions against each other:  the

doctrine applies only when a claim between the parties has been previously 'brought to a final conclusion.'" (quoting Parker v Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 347, 712 N.E.2d 647, 690 (N.Y. 1999)).

The Constitution's Full Faith and Credit Clause requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984); see 28 U.S.C. § 1738. Thus, federal courts look to the state's preclusion law to determine the preclusive effect of a state court's judgment. See Allen, 449 U.S. at 96. In this case, the Court looks to New York law to determine the preclusive effect of the Stipulation.

Under New York's transactional approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." O'Brien v. Syracuse, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159 (N.Y. 1981). A cause of action is not barred by res judicata if judgment in the subsequent action "does not destroy or impair rights or interests established by the judgment in the prior action." Carrols Corp. v. Candy Candy, Inc., 661 N.Y.S.2d 324, 325, 241 A.D.2d 955, 956 (N.Y. App. Div. 1997); see also Matter of LaRocco v Goord, 43 A.D.3d 500, 500, 840 N.Y.S.2d 477 (N.Y. App. Div 2007) (stating res judicata bars a party "from bringing additional actions [against] the same part[y] on the same claims based upon the same harm" (citation omitted)). In actions for indemnification, New York courts hold that "[t]he fact that the parties negotiated a settlement of the [prior] action does not, in itself, impair the right to pursue claims for indemnification among themselves." Denton Leasing Corp. v. Breezy Point Surf Club, Inc., 518 N.Y.S.2d 634, 635, 133 A.D.2d 95, 96 (N.Y. App. Div. 1987).

8

A stipulation with prejudice is accorded the same res judicata effect as a judgment on the merits. See Benjamin v. New York City Dep't of Health, 870 N.Y.S.2d 290, 291, 57 A.D.3d 403, 404 (N.Y. App. Div. 2008); accord Northshore-Long Island Jewish Health Sys., Inc. v. Aetna U.S., 811 N.Y.S.2d 424, 426, 27 A.D.3d 439, 440 (N.Y. App. Div. 2006) ("A stipulation of discontinuance which specifies that it is 'with prejudice' raises a presumption that the 'stipulation is to be given res judicata effect in a future litigation' on the same cause of action." (quoted reference omitted)). New York courts narrowly interpret the language "with prejudice" "when the interests of justice, or the particular equities involved, warrant such an approach." Dolitsky's Dry Cleaners v. Y L Jericho Dry Cleaners, 610 N.Y.S.2d 302, 303, 203 A.D.2d 322, 323 (N.Y. App. Div. 1994). Thus, a stipulation of settlement, with prejudice, that disposes only of a claim between a plaintiff and defendants will bar the settling parties from commencing new litigation arising from the claims disposed of by the order, but not necessarily all claims among the various parties. Allianz Ins. Co. v. Lerner, 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003), *rev'd on unrelated grounds*, 416 F.3d 109 (2d Cir. 2005).

### B. Application

The present action involves the same parties or their privies as the prior action, and the prior action involved the equivalent of an adjudication on the merits. Thus, the question before the Court is whether plaintiffs' instant claims for indemnification should have been asserted in the *Walker* action and are now barred by the settlement and discontinuance of the *Walker* action with prejudice. (See C. Canter Decl. Ex. F.) For the reasons discussed below, plaintiffs' claims are not precluded.

First, plaintiffs' indemnification claims do not arise out of the same transaction or series of transactions as those in the *Walker* action. Despite common factual backgrounds, plaintiffs'

9

claims are not the "same claim" as Walker's claim, nor are they based on the "same harm." See

Employers' Fire Ins. Co. v. Brookner, 850 N.Y.S.2d 554, 556, 47 A.D.3d 754, 756 (N.Y. App.

Div. 2008) (affirming an order denying a motion to dismiss on grounds of res judicata because

an insurer's subrogation action is not based upon the "same claim" or the "same harm" as the

prior action and thus may be brought in a separate action).  Specifically, plaintiffs'

indemnification claim stems from the harm plaintiffs suffered as a result of settling the *Walker*

action, whereas Walker's cause of action was based on the harm she suffered as a result of the

car accident. See id.

        Unlike Walker's personal injury claim, a plaintiff's right to indemnification does not

accrue until "it suffer[s] a loss by payment to the injured party in the prior action pursuant to the

settlement agreement." Denton Leasing, 518 N.Y.S.2d at 635, 133 A.D.2d at 96; see

Winkelmann v. Excelsior Ins. Co., 85 N.Y.2d 577, 582, 650 N.E.2d 841, 844 ("An insurer's

subrogation rights accrue upon payment of the loss."); McDermott v. New York, 50 N.Y.2d 211,

217-18, 406 N.E.2d 460, 462-63 (N.Y. 1980) (holding that accrual occurs upon payment by the

party seeking indemnity since the indemnity claim is a separate substantive cause of action); Bay

Ridge Air Rights, Inc. v. State, 44 N.Y.2d 49, 54, 375 N.E.2d 29, 31 (N.Y. 1978) (noting that "a

cause of action for indemnity accrues on the date payment is made by the party seeking

indemnity").  Therefore, an action for indemnity may be brought as an independent action

subsequent to imposition of judgment against a tortfeasor since the cause of action "accrues not

at the time of the commission of the tort for which indemnity is sought, but at the time of the

payment of the judgment." Musco ex. rel. Musco v. Conte, 254 N.Y.S.2d 589, 595, 22 A.D.2d

121, 125-26 (N.Y. App. Div. 1964).

Plaintiffs are correct in arguing that indemnification claims may be asserted as cross-claims, even where a right to indemnification has not yet accrued.  However, parties that do not assert indemnification claims as cross-claims are not precluded from litigating such claims as separate actions. See Employers' Fire Ins., 850 N.Y.S.2d at 556, 47 A.D.3d at 756.  For example, in an analogous case, Denton Leasing, plaintiffs sought indemnification for a sum paid pursuant to a settlement agreement entered into in a prior action to recover damages for personal injuries sustained in an automobile accident. 518 N.Y.S.2d at 635, 133 A.D.2d at 96.  The Appellate Division, Second Department, rejected the argument that plaintiffs' failure to cross-claim against defendants in the prior lawsuit precluded them from bringing their indemnification claim. Id.; see also Baron v. Grant, 852 N.Y.S.2d 374, 376, 48 A.D.3d 608, 610 (N.Y. App. Div. 2008) (holding that the parties' settlement with the plaintiff in a prior personal injury action did not preclude the vehicle owner from seeking common-law indemnification from the driver of the vehicle). Similarly, here, plaintiffs' claims, although they could have been brought as cross-claims in the *Walker* action, are not precluded in this action.

Second, narrowly construed, the language in the Stipulation does not expressly bar continued litigation between the co-defendants in the *Walker* action.  The Stipulation merely discontinues the action with prejudice, and without costs to any party. (See C. Canter Decl. Ex. F.)  Moreover, the General Release – executed solely by Walker – fully binds and completely settles claims between "the plaintiff[]], the defendants and the insurers, and their heirs, assigns and successors," in consideration of payments to Walker to satisfy her claims in that action. (See id. Ex. G ¶ 3.)  It is clear that the parties' intent was only to preclude relitigation of Walker's cause of action in a subsequent suit. See Dolitsky's, 610 N.Y.S.2d at 304, 203 A.D.2d at 323. Although the Trust did not specifically reserve its right to indemnification when the parties

settled and discontinued the *Walker* action, it did not relinquish its right to indemnification.  See

Lumbermens Mut. Ins. Co. of Kemper Group of Ins. Cos. v. Lumber Mut. Ins. Co., 538

N.Y.S.2d 542, 544, 148 A.D.2d 328, 330 (N.Y. App. Div. 1989) (explaining that respondent did

not relinquish his right to indemnification though he did not specifically reserve any rights as

against appellant in a prior settlement agreement).  As the Stipulation neither expressly nor

impliedly disposed of plaintiffs' indemnification claims, the present action is not barred by res

judicata.

      Allianz supports the Court's holding that, while a stipulation of discontinuance with

prejudice bars a new action by a personal injury plaintiff, it does not bar the subrogee of the

lessor of a vehicle from seeking contractual indemnification against the vehicle's lessees in a

separate action.  In Allianz, which plaintiffs rely on in their opposition papers, the lessor asserted

cross-claims for indemnification and contribution against the lessees in a prior personal injury

action. 296 F. Supp. 2d at 420.  Nonetheless, the district court held that the subsequent action for

indemnification against the lessees initiated by the insurer, as subrogee of the lessor, was not

barred because the stipulations of settlement in the prior action neither expressly nor impliedly

disposed of the contractual cross-claims for indemnification. Id. at 422.

      Defendants attempt to distinguish Allianz from the instant action because, in Allianz, the

insurer's subrogor asserted cross-claims against the lessees in the prior personal injury action,

whereas, here, the Trust did not assert any cross-claims in the prior action, nor did the Stipulation

and General Release reserve the Trust's right to seek indemnification in the future. Id. at 420.

This distinction is unpersuasive.  Because the stipulations of settlement neither adjudicated nor

disposed of the subrogor's contractual indemnification claim, the Allianz court found no bar to

the subsequent action. Id. at 422.  The stipulations of settlement only dismissed the Allianz

plaintiff's personal injury claims against each of the <u>Allianz</u> defendants, but had no effect on the

cross-claims between the insurer's subrogor and the lessees. <u>Id.</u> Similarly, here, the Stipulation

in the state action neither expressly or impliedly disposed of potential causes of action between

each co-defendant; rather, the Stipulation and accompanying General Release "on the part of the

plaintiff" brought to a final judgment Walker's personal injury claims, thus barring her from

bringing any new action arising out of the car accident that gave rise to the state court litigation.

Defendants argue that rather than <u>Allianz</u>, <u>Fifty CPW Tenants Corp. v. Epstein</u>, 792

N.Y.S.2d 58, 16 A.D.3d 292 (N.Y. App. Div. 2005) controls the instant matter. In <u>Fifty CPW</u>, a

corporation, which had been sued by tenants for damages caused by a leaking roof in a prior

action, commenced a third-party action for indemnification and contribution against the

contractor. 792 N.Y.S.2d at 59, 16 A.D.3d at 293. While the third-party was in settlement

discussions, the corporation commenced a direct action against the contractor, seeking to recover

on guarantees for the same work at issue in the third-party action. <u>Id.</u> The third-party action was

then discontinued by stipulation, with prejudice. <u>Id.</u> The Appellate Division, First Department,

held that the direct action arose from the same transaction as the third-party action, and was

barred by the prior stipulation discontinuing the third-party action with prejudice because the

corporation did not reserve its right to pursue an indemnification claim in the stipulation. <u>Id.</u>, 792

N.Y.S.2d at 60, 16 A.D.3d at 294. Defendants argue that the Court should rule similarly here.

<u>Fifty CPW</u> is distinguishable from the instant case. During settlement negotiations,

plaintiff in <u>Fifty CPW</u> sought to insert language into the stipulation that would reserve the

corporation's right to seek indemnification in the future. The contractor refused to agree to the

inclusion of such a provision; thus, the <u>Fifty CPW</u> court reasoned that the corporation could not

"now escape the effect of its agreement to a stipulation that ended its third-party action against

[the contractor] 'with prejudice' and without qualification or limitation." Id. This reasoning does not apply here, since at the time of settlement with Walker, no party appears to have raised the prospect of a future action for indemnification, and thus defendants never rejected a request to carve out this right from the Stipulation. Therefore, the Court finds that the Trust did not relinquish its right to indemnification in the prior settlement with Walker. Defendants' motion to dismiss on the ground of res judicata is denied.

II.    SERVICE OF PROCESS

Defendants also move to dismiss pursuant to Rule 12(b)(5), claiming service of process was insufficient because plaintiffs served Adam Canter at his parents' apartment in New York, rather than his "dwelling place or usual place of abode," which is in Mexico. (Defs.' Mem. 13.) Further, defendants argue that plaintiffs failed to file an affidavit of service of a summons and complaint within 20 days of their "nail and mail" service.

A.    Rule 12(b)(5) Standard of Review

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). "[I]n considering a motion to dismiss pursuant to [Rule] 12(b)(5) for insufficiency of [service of] process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Plaintiff bears the burden of proving that service was adequate. See Selinger v. City of New York, No. 08 Civ. 2096, 2009 U.S. Dist. LEXIS 55207, at *11 (S.D.N.Y. June 30, 2009); see also Persaud v. Teaneck Nursing Ctr., Inc., 736 N.Y.S.2d 367, 367, 290 A.D.2d 350, 351 (N.Y. App. Div. 2002) ("It is well settled that the plaintiff has the

burden of proving, by a preponderance of the credible evidence, that service was properly

made.").

        1.  "Nail and Mail" Service

Under Federal Rule of Civil Procedure 4(e)(1), an individual defendant may be served by

"following state law for serving a summons in an action brought in courts of general jurisdiction

in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Plaintiffs claim that defendants were properly served with process pursuant to N.Y. C.P.L.R.

§ 308(4). Section 308(4) allows for service of process:

> by affixing the summons to the door of . . . [the] dwelling place or usual place of
> abode within the state of the person to be served and by . . . mailing the summons
> to such person at his or her last known residence . . . such affixing and mailing to
> be effected within twenty days of each other; proof of such service shall be filed
> with the clerk of the court designated in the summons within twenty days of either
> such affixing or mailing.

N.Y. C.P.L.R. § 308(4).

While "nail and mail" service, as described in § 308(4), permits plaintiff to "mail" the

summons and complaint to the defendant at his last known residence, plaintiff must "nail" the

documents to defendant's "actual place of business, dwelling place or usual place of abode."

Sasscer v. Kammerer, 856 N.Y.S.2d 26, 26, 18 Misc. 3d 128A, 128A (N.Y. App. Div. 2007); see

Allianz Ins. Co. v. Otero, No. 01 Civ. 2598, 2003 U.S. Dist. LEXIS 1284, at * 6 (S.D.N.Y. Jan.

29, 2003) (declaring that service was defective where the summons and complaint were nailed to

the door of defendants' "last known residence," rather than their "actual dwelling place or usual

place of abode"); Feinstein ex rel. Wilensky v. Bergner, 48 N.Y.2d 234, 239, 397 N.E.2d 1161,

1163 (N.Y. 1979) ("The 'nail and mail' provision of the CPLR permits a plaintiff to mail

duplicate process to the defendant at his last known residence, but clearly requires that the

'nailing' be done at the defendant's 'actual place of business, dwelling place or usual place of

abode'."); <u>Gibson v. Salvatore</u>, 476 N.Y.S.2d 930, 932, 102 A.D.2d 861, 862 (N.Y. App. Div. 1984) (holding that nailing the summons and complaint to the door of defendant's last known residence rather than her actual abode rendered the "nail and mail" service defective, since it did not comply with the requirements of N.Y. C.P.L.R. § 308(4)); <u>see also</u> <u>Stillman v. City of New York</u>, 834 N.Y.S.2d 115, 117, 39 A.D.3d 301, 302-03 (N.Y. App. Div. 2007) ("While there may be some question as to whether there is a distinction between 'dwelling place' and 'usual place of abode,' there has never been any serious doubt that neither term may be equated with the 'last known residence' of the defendant." (quoting <u>Feinstein</u>, 48 N.Y.2d at 239, 397 N.E.2d at 1163)). <u>But cf.</u> <u>Polygram Merchandising, Inc. v. N.Y. Wholesale Co.</u>, No. 97 Civ. 6489, 2000 U.S. Dist. LEXIS 166, at *6 (S.D.N.Y. Jan. 12, 2000) (noting that one may have multiple "dwellings" or "usual places of abode" if each residence is associated with a sense of permanence.).

    2.  Proof of Service

Rule 4 also states that "proof of service must be made to the court . . . by the server's affidavit." Fed. R. Civ. P. Rule 4(l). However, according to Rule 4(l)(3), "failure to prove service does not affect the validity of service." Similarly, "the requirement in [§] CPLR 308(4) that proof of service be filed with the clerk of the court within 20 days of affixing or mailing of the summons and complaint, whichever is effected later, 'pertains solely to the time within which a defendant must answer, and does not relate to the jurisdiction acquired by service of the summons.'" <u>Penachio v. Penachio</u>, 812 N.Y.S.2d 592, 594, 27 A.D.3d 540, 541 (N.Y. App. Div. 2006) (quoting <u>Helfand v. Cohen</u>, 487 N.Y.S.2d 836, 838, 110 A.D.2d 751, 752 (N.Y. App. Div. 1985)).

B. Application

    1.  Service on Adam Canter

    Defendant Adam Canter asserts that he has not yet been properly served because his parents' New York apartment is not his "dwelling place" or "usual place of abode." (See Decl. of Adam Canter, sworn to on Oct. 17, 2007 ("A. Canter Decl."), ¶ 5.)  Rather, Adam Canter declares, under penalty of perjury, that he moved to Mexico on July 22, 2007 for medical school and is now "domiciled and reside[s] at 1371 Callejon del Quijote, Apartment No. 6, Zapopan, Jalisco, Mexico 45110," where he intends to remain for the entirety of medical school. (See id. ¶ 2.)  Plaintiffs nonetheless assert that they properly served all three defendants by "nail and mail" service at their residence located at 333 E. 79 Street, Apt. 3N, New York, NY on August 28, 2007.  Specifically, after six unsuccessful attempts to deliver the summons and complaint to the Canters and Adam Canter, three copies were affixed to the front door of the Canters' E. 79th Street apartment and three additional copies were mailed to that address in a plain envelope marked "personal and confidential." (Pls.' Mem., Ex. A.)

    The Court finds that plaintiffs' "nail and mail" service was not properly executed on Adam Canter.  As defendants contend, service on Adam Canter was defective because the summons and complaint were affixed to the door of his "last known residence" rather than to his "actual dwelling place or usual place of abode," as required by C.P.L.R. § 308(4).  Plaintiffs have not submitted any evidence to support their contention that Adam Canter's actual dwelling place or usual place of abode at the time of service was his parent's apartment in New York.[4]  In fact, Adam Canter had moved to Mexico over one month before the "nail and mail" service, and

---

[4] Since plaintiffs fail to raise a factual issue of whether Adam Canter's dwelling place or usual place of abode at the time of service was the Canter's apartment, the Court need not conduct a preliminary hearing pursuant to Federal Rule of Civil Procedure 12(d). See Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F.Supp. 2d 367, 385 (S.D.N.Y. 2006) (Leisure, J.).

therefore plaintiffs should have served Adam Canter at his dwelling place in Mexico. See

Agarwal v. Flushing Hosp. & Med. Ctr., 496 N.Y.S.2d 238, 239, 115 A.D.2d 577, 577 (N.Y.

App. Div. 1985) (finding service upon defendant 12 days after defendant moved out of his

residence defective under C.P.L.R. § 308(4)).

As plaintiffs have failed to carry their burden of proving that service was properly made

under N.Y. C.P.L.R. § 308(4), defendant Adam Canter's motion to dismiss for insufficient

service of process is granted. See Bernardo v. Barrett, 57 N.Y.2d 1006, 443 N.E.2d 953 (N.Y.

1982) (affirming lower court's dismissal where plaintiffs failed to prove adequate service by

providing evidence that defendant's contentions as to her actual residence were false).  However,

the Court stays dismissal for thirty days to give plaintiffs the opportunity to properly effectuate

service on Adam Canter. See Wilcock v. Equidev Capital L.L.C., No. 99 Civ. 10781, 1999 U.S.

Dist. LEXIS 19385, at *5 (S.D.N.Y. Dec. 15, 1999) (granting Rule 12(b)(5) motion to dismiss,

but staying dismissal for thirty days to provide plaintiff the opportunity to effect proper service).

2.  Failure to Timely File Affidavits of Service with the Clerk of the Court

Defendants also move to dismiss pursuant to Rule 12(b)(5) because plaintiffs failed to

file an affidavit of service of a summons and complaint within 20 days of the "nail and mail"

service.  However, "failure to file a timely proof of service is a curable procedural irregularity."

Zareef v. Wong, 877 N.Y.S.2d 182, 183, 61 A.D.3d 749, 749 (N.Y. App. Div. 2009); see

Weininger v. Sassower, 612 N.Y.S.2d 249, 250, 204 A.D.2d 715, 716 (N.Y. App. Div. 1994)

(explaining that failure to file proof of service within 20 days constitutes a "mere irregularity"

rather than a "jurisdictional defect").  Plaintiffs' filing of an affidavit of service of a summons

and complaint on October 29, 2007 cured this procedural irregularity.  Thus, defendants' motion

to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for failure to file an affidavit of service with the Clerk of the Court is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action on the grounds of res judicata is DENIED.  Further, defendants' motion to dismiss for insufficient service of process is DENIED with respect to the Canters.  However, with respect to Adam Canter, defendants' Rule 12(b)(5) motion is GRANTED, but stayed for thirty (30) days to provide plaintiffs the opportunity to effect proper service.  The parties are hereby ordered to appear for a pre-trial conference before this Court on October 1, 2009 at 11:00 a.m. in Courtroom 18B.

**SO ORDERED.**

New York, New York
August **//** , 2009

U.S.D.J.

19